**ANDERSON et al. v. SCANDRETT et al.**

No. 2931.

District Court, D. Minnesota, Third Division.

June 3, 1937.

F. W. Root, C. O. Newcomb, and A. C. Erdall, all of Minneapolis, Minn. (L. B. Mann, of Chicago, Ill., of counsel), for defendants.

Harold Olsen, of Minneapolis, Minn., for plaintiffs.

NORDBYE, District Judge (after stating the facts as above).

The bill of complaint joined as defendants the three trustees and one M. P. Graven. Plaintiffs consented to the striking of M. P. Graven as a party defendant, and an order to that effect has been filed herewith. The defendants, therefore, in this order will be referred to as the defendant trustees. The bill avers that the plaintiffs are the exclusive owners of all right, title, and interest in and to patents Nos. 1,580,108, 1,740,720, and 1,760,465, and that the plaintiffs are the owners of the right to manufacture and sell, and to license others to manufacture and sell railroad frogs under said patents. It is alleged that since October 17, 1935, the defendant trustees have had a regular and established place of business within the jurisdiction of this court, and without license and against the will and consent of the plaintiffs herein have used on the railroad right of way of the Chicago, Milwaukee, St. Paul & Pacific railroad within this district, and are still continuing to make and use said inventions and the improvements described and claimed in said letters patent in violation of the rights of these plaintiffs. It is also alleged that

there were prior license agreements issued to the debtor railroad company which have been terminated, but that the trustees, notwithstanding the knowledge thereof, have continued since October 17, 1935, to commit the acts of infringement referred to. A permanent injunction is sought with accounting of profits and damages sustained by plaintiffs resulting from said infringement. Service was made on M. P. Graven, local freight agent at St. Paul, Minn.

It appears that the Chicago, Milwaukee, St. Paul & Pacific Railroad Company, hereinafter referred to as the debtor corporation, filed its petition under section 77 of the Bankruptcy Act, as amended (11 U. S.C.A. § 205 note), in the Northern District of Illinois, Eastern Division, on June 29, 1935. The defendant trustees were appointed and qualified on October 17, 1935. It is the latter date that the bill of complaint herein alleges as the date when the acts of infringement began by the trustees. When the debtor's petition was approved on June 29, 1935, the following provision which is still in full force and effect was entered by the court enjoining:

"All persons * * * whatsoever and wheresoever situated, located or domiciled * * * from interfering with, attaching, garnisheeing, levying upon or enforcing liens upon, or in any manner whatsoever disturbing any portion of the assets * * * railroads * * * in possession of the Debtor * * * or in any way interfering with the same or any part thereof, or from interfering in any manner with the operation of its railroad or properties, or the carrying on of its business by the Debtor under the orders of this Court. * * * * "

The proceedings under section 77 are still pending and the railroad is being operated by these trustees. No consent to the prosecution of this action has been given by the appointing court. Section 66 of the Judicial Code (28 U.S.C.A. § 125) provides:

"*Suits against receiver.* Every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such manager or receiver was appointed so

far as the same may be necessary to the ends of justice."

 This statute has been held applicable to receivers appointed by courts of bankruptcy in Re T. L. Kelly Dry-Goods Co. (D.C.) 102 F. 747; In re Kanter (C.C.A.) 121 F. 984; In re Smith (D.C.) 121 F. 1014; In re Kalb, etc., Mfg. Co. (C.C.A.) 165 F. 895. The trustees herein are a combination of ordinary trustees in bankruptcy and receivers in equity. It would seem, therefore, that where there is an operating trusteeship under section 77 of the Bankruptcy Act, and a claim arises against said trustees by reason of the carrying on of said business, suit may be commenced without previous leave of court. Moreover, it is generally recognized that the last clause of section 66 of the Judicial Code (28 U.S.C.A. § 125), reading, "but such suit shall be subject to the general equity jurisdiction of the court in which such manager or receiver was appointed so far as the same may be necessary to the ends of justice," merely reserves to the appointing court the sole power over the matter of satisfaction of the rights determined in such other courts. Dillingham v. Hawk (C.C.A.) 60 F. 494, 23 L.R.A. 517; St. Louis Southwestern R. Co. v. Holbrook (C.C.A.) 73 F. 112; American Brake Shoe, etc., Co. v. Pere Marquette R. Co. (D.C.) 278 F. 832. Nor does the injunction in the order of the appointing court prevent the institution and prosecution of this suit in this jurisdiction. True, an injunction is sought with an accounting of profits and damages, but the determination of the issues herein will not violate the restraining order that was entered, nor will the institution of this suit interfere with the trustees' operation of the railroad. Any injunction that may be entered herein must be limited so as to comply with the appointing court's order; for instance, to permit the railroad to keep the alleged infringing devices upon paying reasonable compensation and to enjoin future infringement. But there is no basis for the contention that suits arising by reason of the operation of this railroad by the trustees must be lodged in the venue of the appointing court. The very impracticability of such procedure is apparent. Certainly, it could not be urged that all the shippers doing business with the railroad company while under trusteeship must proceed with their claims before the appointing court. It is recognized that the appointing court

must have complete and exclusive jurisdiction to prevent any interference with the property of the debtor which will hinder or delay the ultimate reorganization, but the determination of claims that will not be discharged by the bankruptcy proceedings may be determined in any forum where jurisdiction is obtained. The relief to be granted, if any, in view of the injunction of the appointing court can be determined later.

The next question to be determined is whether or not this court has jurisdiction of the nonresident trustees by reason of the service upon the local freight agent at St. Paul. Plaintiffs rely on section 9233, Mason's Minnesota Statutes 1927, which reads:

"In any action or proceeding against a railway company, whether domestic or foreign, including proceedings under the right of eminent domain, service of the summons and of all notices required to be served therein may be made by delivering a copy thereof to any ticket or freight agent of such company within the county in which the action or proceeding is begun, with the same effect as though made pursuant to § 9231: Provided that, if such company shall appear in an action by a resident attorney, service shall thereafter be made upon such attorney."

 However, it is doubtful if the statute is applicable. The proceedings herein are not against the railroad corporation. The alleged acts of infringement were perpetrated by the trustees. The trustees are natural persons and the manner of service prescribed by section 9233 pertains to service on a railway corporation. See Kading v. Waters et al., 137 Minn. 328, 163 N.W. 521. The case of Ihlan v. Chicago, Rock Island & Pacific Railway Co., 137 Minn. 204, 163 N.W. 283, is not in point because there the claim was against the corporation and not against the receivers. But this being a patent infringement suit, resort must be had to the federal statute in order to determine whether plaintiffs have established jurisdiction in this court. Section 48 of the Judicial Code (28 U.S.C.A. § 109) reads:

"Patent cases. In suits brought for the infringement of letters patent the district courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership,

or corporation, shall have committed acts of infringement and have a regular and established place of business. If such suit is brought in a district of which the defendant is not an inhabitant, but in which such defendant has a regular and established place of business, service of process, summons, or subpœna upon the defendant may be made by service upon the agent or agents engaged in conducting such business in the district in which suit is brought."

It is not denied that the trustees of the debtor railroad have a "regular and established place of business" within the state of Minnesota. It is, of course, conceded that the trustees are not inhabitants of this district, but defendants contend that the service of process, summons, or subpœna must be made by service upon the agent that actually is conducting the infringing business. It is set forth in defendants' affidavits in support of the motion that Graven, the local freight agent, has nothing to do with the frogs in the railroad tracks, and is not concerned with the installation or the maintenance thereof. One Mr. Penfield, a resident of Chicago, makes an affidavit that he is chief engineer for the trustees and that the supplying and maintaining of railroad frogs on all the property being operated by the trustees within the District of Minnesota is under his jurisdiction. The inference presumably is that plaintiffs cannot obtain jurisdiction under section 48 of the Judicial Code unless service is made upon Penfield in Chicago. But if defendants' construction of the term "agent" as used in the statute is correct, the applicability of the statute would be reduced not only to an absurdity, but where a large corporation is concerned, jurisdiction might never be obtained in a district where an infringing nonresident defendant had a regular and established place of business. If defendants' construction is correct, the use of an infringing device on a locomotive engine, for instance, would in the instant case require service on the superintendent who had charge of the power and rolling stock. If the infringement consisted of the unauthorized use of a telegraph instrument, service would have to be made on the agent in charge of that field of operation. Certainly, the statute is not capable of any such construction, and the very purpose of the statute would be defeated by such an interpretation. In the instant case, for instance, all of the "agents" in charge of the various departments of the railroad are not even residents of the state of Minnesota.

The trustees are operating an extensive railroad system in this state. If they are using infringing devices on their tracks in this district, they are amenable to the jurisdiction of this court under section 48 of the Judicial Code. To determine with an exactness the agent or agents in charge of their business in this state should not be necessary. The purpose of service on an agent in charge of a nonresident business is to insure notice of the suit to the nonresident. The statute must receive a reasonable and sensible construction. It may be noted that the statutes of Minnesota, while not controlling, are helpful in determining the type of agents that may be recognized as proper representatives upon whom service may be made where a nonresident railroad corporation is doing business within this state. It appears from the affidavit of M. P. Graven that he is the local freight agent for the trustees, with the place of performing his duties at St. Paul in the district of Minnesota. He states that his duties have to do with the receipt and shipment of freight and delivery of freight, and the matter of collecting freight charges at the freight depot operated by the trustees at St. Paul. The mere fact that his duties do not require him to furnish or maintain railroad frogs does not make him any less the agent of the trustees, who have concededly a regular and established place of business in this district. The state of Minnesota considers that a local freight agent is a person of sufficient standing as agent of a nonresident railroad corporation to permit service to be made upon him. Certainly, in this proceeding, the local freight agent is one of the agents in charge of a portion of the business being regularly carried on in this district. Presumably, there might be other agents that would fairly come within the scope of the statute, but giving to the statute a practical construction, it would seem that service upon a local freight agent of the railroad company, who is acting as such in behalf of the trustees, who are the defendants herein, fairly complies with the provision of section 48 of the Judicial Code. In commenting upon this section of the Code, the District Court of the Southern Division of New York in National Electric Signaling

Co. v. Telefunken Wireless Telegraph Co. et al., 194 F. 893, at page 894, stated:

"A motion is made to set aside this service, because it was not made by service upon the agent or agents engaged in conducting the business of the corporation in this district. Reference is had to the Jurisdiction Act of March 3, 1897. That act provides that when a corporation, not an inhabitant of a particular district, shall have committed acts of infringement and have a regular and established place of business in such district, service may be made upon the agent or agents engaged in conducting such business in the district. This language is permissive merely, and I see no reason why it should be construed as imperative. If the regular officers of a corporation, upon whom service may generally be made, are found here, where the company has a regular and established place of business, there is no necessity for a substituted service on some local agent."

The third ground upon which the defendants seek to dismiss a portion of the complaint must be sustained. This refers to the lack of jurisdiction of this court to entertain the suit for infringement of Anderson patent No. 1,740,720. This patent is for a method of producing fillers for railroad frogs. It is conceded apparently that the trustees have never used any method of producing fillers for railroad frogs within this district. If this court is to entertain jurisdiction of the alleged infringement of this patent, it must appear that the acts of infringement have actually been committed within this district. However, it now indisputably appears that neither the railroad corporation nor the trustees have manufactured, made, or fabricated fillers for railroad frogs or frog points within this district, nor have they maintained within said district any place of business for the manufacture thereof. Use of the patented method within this district is essential to jurisdiction. The court does not understand that, merely because it has jurisdiction over the alleged infringement of two of the patents, it may assume jurisdiction of a related patent. Plaintiffs allege, however, that joinder of causes of action of which the court has no jurisdiction with causes of action over which it has jurisdiction is approved by Hurn et al. v. Oursler et al., 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. That plaintiffs have misapplied the principles of that case is clear from the following quotation (289 U.S. 238, at page 246, 53 S.Ct. 586, 589, 77 L.Ed. 1148):

"The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal ground; in the latter it may not do so upon the nonfederal cause of action."

We do not have herein distinct grounds for the support of a single cause of action. There are necessarily three separate causes of action in this bill involving alleged infringement of three separate and distinct patents. Infringement of two is alleged to have taken place in this district. It is recognized that the infringement of the third has not taken place within the district. Clearly, therefore, the court does not have jurisdiction to litigate the alleged infringement of patent No. 1,740,720. The convenience or desirability of determining the entire litigation between the parties in this jurisdiction may be impelling, but it does not vest jurisdiction. Therefore, in harmony with the views herein expressed,

It is ordered that the special appearance and motion to quash subpœna and dismiss the bill of complaint as to causes of action relating to patents Nos. 1,580,108 and 1,760,465 are overruled, and the special appearance and motion to quash subpœna and to dismiss the bill of complaint as to the cause of action relating to patent No. 1,740,720 be and the same are hereby sustained. It is further ordered that as to the two causes of action remaining in the bill, the defendants have twenty days after the filing of this order within which to answer herein.