UNITED STATES v. McGOURIN.

(Circuit Court of Appeals, Fifth Circuit. January 22, 1901.)

No. 974.

1. UNITED STATES COMMISSIONERS—FEES—RECORD ENTRIES MADE UNDER RULE OF COURT.

A commissioner of a circuit court was an officer of such court, and subject to its rules prescribing his administrative duties, the manner of keeping his records, etc., and he is entitled to his statutory fees for making the entries in his docket in criminal cases required by such rules.

2. SAME—SUIT FOR FEES—REVIEW OF FINDINGS.

The findings of a district court in a suit against the United States, brought by a commissioner to recover fees, under Act March 3, 1887 (24 Stat. 505), as to the correctness of the fees charged, will be held conclusive on appeal, in the absence of clear and unequivocal proof of mistake.

3. SAME—FILING FEES—COPY OF COMPLAINT ATTACHED TO WARRANT.

Under the provision of Act March 3, 1893 (27 Stat. 609), requiring the officer or magistrate issuing a warrant to attach thereto a certified copy of the complaint, and providing that upon the arrest of the accused the return of the warrant, with the copy of the complaint attached, shall confer jurisdiction upon the officer before whom it is returned, the warrant and the copy, together with the return thereon, constitute a single paper, to be filed as such by a commissioner before whom the return is made, and he has no authority to detach the copy, and charge a separate fee for filing the same.

In Error to the District Court of the United States for the Northern District of Florida.

For opinion below, see 102 Fed. 553.

John Eagan and W. W. Howe, for the United States.
Buckler Chipley and Henry Bellinger, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, delivered the opinion of the court.

This was an action brought by Thomas F. McGourin, the defendant in error, against the United States, the plaintiff in error, in the district court for the Northern district of Florida. The petition avers as follows:

"Your petitioner, who was up to the 1st day of July, 1897, a commissioner of the circuit court of the United States for the Northern district of Florida, residing at De Funiak, and who has been since said date, and is now, a United States commissioner for the Northern district of Florida, for this honorable court, and during all of the period covered by dates in the bill of particulars hereto attached qualified and acting as such commissioner, and then and there residing as above set forth. That, in the course of the discharge of his duties as such commissioner, there became due to him from the United States, the defendant, fees which are more specifically enumerated in the bill of particulars hereto attached and made a part hereof. That, in accordance with law, at the end of the current quarter, with one exception enumerated in Schedule A, during which said fees were earned, he rendered an account of the same, supported by vouchers and items, to this honorable court, and forwarded the same to the United States district attorney for this district, who thereupon presented the same, in open court, for its approval, and, with exceptions hereinafter enumerated, proved in open court, to the satisfaction of the court, by his oath, which was attached to said account, that the services therein charged had been actually and necessarily performed as therein stated, and this honorable court, at each and every time the said accounts were presented, caused to be made and entered of record an order approving each and every of the said items hereinafter enumerated (with the following exceptions), which appears of record in this honorable court. That, owing to certain rulings of the accounting officers, certain items for docket entries, as set forth in Schedule A, were not presented during current quarter, but thereafter, the ruling of the treasury department having been changed, a supplemental account was presented and approved as above set forth. That in the account rendered for the quarter ending September 30, 1895, upon recommendation and at the instigation of the United States district attorney, who then had possession of said accounts, and without notice to plaintiff, certain disallowances were made by this honorable court, which plaintiff avers was not a final adjudication of the said several items, but was solely an ex parte proceeding. And likewise in his account for the quarter ending December 31, 1896, a similar disallowance, upon analogous circumstances, was made. Thereafter, in the course of business, the said accounts were forwarded and came to the offices of the various accounting officers of the United States treasury, and the said items enumerated in the bill of particulars hereto attached were finally disallowed and rejected, and payment refused thereof, for the reasons and causes stated in the said bill of particulars."

The bill of particulars embraces ten schedules, lettered "a" to "j," inclusive, with items under each schedule showing date and character of service, and fees charged, aggregating the sum of $397.75. The United States appeared by the district attorney, and submitted a general demurrer to the action, and specific grounds of demurrer to the petition and its schedules and items as set forth in the original and amended bill of particulars. The case came on for trial on the 9th of June, 1900, upon which the court announced and decreed "that the petitioner, T. F. McGourin, have judgment, and the same is hereby entered against the defendant, the United States, for

the sum of three hundred and ninety-six and $^{15}/_{100}$ ($396.15) dollars, with interest from the date hereof until paid, together with the sum of seventeen and $^{75}/_{100}$ ($17.75) dollars, costs incurred by the said petitioner, the United States having put in issue the right of the petitioner to recover anything in and by said suit, and that this record and judgment be certified according to law."

Twelve specifications of error are assigned, which, taken together, are substantially to the effect that the district court erred in allowing each one of the charges in the bill of particulars attached to the declaration. The act of 16th of August, 1856, as brought forward in section 846 of the Revised Statutes, provided that:

"The accounts of  *  *  *  commissioners of the circuit court shall be examined and certified by the district judges of the district for which they are appointed before they are presented to the accounting officers of the treasury department for settlement. They shall then be subject to revision upon their merits by said accounting officers, as in case of other public accounts."

Section 1 of the act of February 22, 1875, to regulate fees and costs and for other purposes (18 Stat. 333), provides that:

"Before any bill of costs shall be passed by any judge or other officer, or any account payable out of the money of the United States shall be allowed by any officer of the treasury in favor of clerks, marshals, or district attorneys, the party claiming such account shall render the same, with the vouchers and items thereof, to a United States circuit or district court, and in presence of the district attorney, or his sworn assistant, whose presence shall be noted on the record, prove in open court, to the satisfaction of the court, by his own oath or that of other persons having knowledge of the facts, to be attached to such account, that the services therein charged have been actually and necessarily performed as therein stated, and that the disbursements charged have been duly paid in lawful money; and the court shall thereupon cause to be entered of record an order approving or disapproving the account, as may be according to law and just. United States commissioners shall forward their accounts, duly verified by oath, to the district attorneys of their respective districts, by whom they shall be submitted for approval in open court, and the court shall pass upon the same in the manner aforesaid.  *  *  *  Nothing contained in this act shall be deemed in any wise to diminish or affect the right of revision of the accounts to which this act applies by the accounting officers of the treasury, as exercised under the laws now in force."

Referring to the law just quoted, it is said in the opinion in U. S. v. Jones, 134 U. S. 488, 10 Sup. Ct. 615, 33 L. Ed. 1007:

"The approval of a commissioner's account by a circuit court of the United States under the act of February 22, 1875 (18 Stat. 333), is prima facie evidence of the correctness of the items of that account, and, in the absence of clear and unequivocal proof of a mistake on the part of the court, it should be conclusive."

It is evident from the action of the accounting officers on the accounts of the defendant in error, as shown in this case, that, if the action of the court in approving those accounts was received as prima facie evidence of the correctness of the items thereof, it could not have been accepted as entitled to that weight which required clear and unequivocal proof of a mistake on the part of the court to rebut its conclusive force. It may be that the fact that such judgments are not given conclusive force has had a strong tendency, and a most natural one, to mark the proceedings in the presenta-

tion to the court of such accounts by the district attorney, and the action of the court thereon, as largely formal and ex parte, and to deprive them of that just weight which judgments rendered on an issue contradictorily presented should receive, and that this effect upon the court's proceedings in such matters has strongly and naturally reacted on the accounting officers of the treasury, so that the presentation of the accounts to the court, and the approval thereof by the court, has in practice become only a condition precedent to their presentation to the accounting officers. Doubtless, it was to relieve in some measure embarrassments resulting from this condition of things which prompted the provision in the act of March 3, 1887 (24 Stat. 505), that the district courts should have jurisdiction to hear and determine cases like the present, where the amount involved is less than $1,000, to be "tried by the court without a jury," and requiring that the court trying the case "should cause a written opinion to be filed in the cause, setting forth the specific findings by the court of the facts therein, and the conclusions of the court upon all questions of law involved in the case, and to render judgment thereon." Section 7, Act March 3, 1887 (24 Stat. 506).

The provision of the statute just quoted was fully and carefully complied with by the district court in the trial of this case. The Schedule A mentioned in the bill of particulars embraces charges amounting to $213.45, being considerably more than half of the aggregate of all the fees claimed in this suit. The first item of that schedule is entered thus:

"Making necessary docket entries, in compliance with rules of court, in all cases of a criminal nature prosecuted by the United States, in a regular commissioner's docket kept by petitioner, from the 1st of April, 1895, to the 1st of January, 1896, 996 folios, at 15c., $149.40."

In reference to the other six items, there is a note to this effect:

"Items 2 to 7, inclusive, represent folios arbitrarily disallowed and deducted from the number of docket entry folios charged in the quarterly accounts for those periods, without any specification as to the case or the number in any particular case, but represents the folios deducted from the total number charged for."

In reference to this Schedule A, the special finding by the district court, so far as necessary to recite the same, is:

"As applicable to the items in Schedule A of the petition of the said plaintiff, the court finds that under the rules of this court, and by the act of May 28, 1896, commissioners of the circuit court of the United States, and their successors, the United States commissioners, were required to keep a docket of all cases of a criminal nature coming before them according to law, for action by them, containing the date of the affidavit and issuance of warrant, the return, the date of trial, and other data in connection with the case; that, in compliance with law, the said petitioner entered in his docket various entries subsequently charged for in his quarterly accounts, enumerating each entry as a folio relative to a specific and distinct step in the progress of any cause."

And in the opinion filed it is said as follows:

"Schedule A includes charges for docket entries relative to the issue of process, return, date of taking, affidavit, date of hearing, disposition of the cause, etc., in compliance with the order made by this court on the 5th day of May, 1881, * * * whereby commissioners are required to keep such a

docket, in which shall be entered the time of taking the affidavit, the issuing of process, the hearing, and orders relative to bail and discharge and binding over."

There is in the record a memorandum of agreement made by the district attorney and the attorneys for the defendant in error, which is, in part, as follows:

"The testimony of witnesses being expressly waived by both parties, the following stipulated facts are to be taken by the court as evidence in regard to the matters in controversy in this cause: * * * Item 1 of Schedule A represents charges for entering criminal causes in the petitioner's docket, up to and including the 31st day of December, 1895, which charges were presented in a supplemental account to the court and approved, no charge for docket entries having been theretofore made and presented for payment by the commissioner in any criminal causes before him prior to said day. That all other charges in said Schedule A, and including item 1, represent a fee charged for entries pursuant to rules of court. It is admitted, however, by the defendant that the method of making the entries was in compliance with the said rules of court in this respect; that the defendant, the United States, reserves the right to contend that the manner of entry was excessive in the use of words and figures, and that the same should have been more condensed and concise; but defendant, the United States, admits that, upon a count of the actual number of words, the petitioner did not charge for a greater number of folios than the written and printed entries in his books would count, either estimating such entry as separate or counting them consecutively."

In the opinion in the case of U. S. v. Allred, 155 U. S. 595, 15 Sup. Ct. 231, 39 L. Ed. 273, in speaking of commissioners of the circuit court, the following language is used:

"While their duties are thus prescribed by law, and while they are to a certain extent independent in their statutory and judicial action, there is no law providing how their duties shall be performed: and, so far as relates to their administrative action, we think they were intended to be subject to the orders and directions of the court appointing them. As was said by this court in Griffin v. Thompson, 2 How. 244, 257, 11 L. Ed. 253: 'There is inherent in every court a power to supervise the conduct of its officers, and the execution of its judgments and process. Without this power courts would be wholly impotent and useless.' While no express power is given over these officers by statute, their relations to the court are such that some power of this kind must be implied. Though not strictly officers of the court, they have always been considered in the same light as 'masters in chancery and registers in bankruptcy, and subject to its supervision and control. What shall be the nature of the requirements in each particular case must be left largely to the discretion of the court. Certainly we cannot assume that the court will abuse its discretion, or will act otherwise than is deemed conducive to the public good."

We do not deem it necessary to take up the other nine schedules in detail. If the approval of a commissioner's account by a circuit court of the United States under the act of February 22, 1875, supra, is prima facie evidence of the correctness of the items of that account, and in the absence of clear and unequivocal proof of a mistake on the part of the court it should be conclusive, we feel justified in accepting the judgment of the district court in this case as conclusive in reference to all of the other schedules and items thereof, except the items of Schedule E. They are as follows:

"Item 1. Filing nine copies of complaints made before other commissioners, which had been attached and returned with warrants in criminal cases heard before petitioner from July 1 to September 30, 1895, at 10c., $.90. Item 2. Same services, under similar circumstances, from October 1 to December 31, 1895, 5 copies, filed at 10c., $.50. Total Schedule E, $1.40."

In the opinion of the district court the following appears:

"Schedule E. The petitioner claims fees for filing copies of complaints made before other commissioners who had issued warrants thereon with said copies attached, and which were returned before the petitioner to be heard. This copy of the original affidavit is the foundation of the jurisdiction of a commissioner other than the one taking the affidavit. It is not properly a part of the warrant, but is merely attached to the warrant, in order to be kept with the same and go into the hands of the proper commissioner, who should then file the same, together with the return of the warrant, and proceed to dispose of the case. There is no contention on the part of the government that a filing fee of 10 cents for each paper in a case is not proper, and the same has been invariably allowed."

In our opinion, there is in this ruling of the district court manifest error. The language of the statute bearing on this subject is:

"And the officer or magistrate issuing the warrant shall attach thereto a certified copy of the complaint; and upon the arrest of the accused, the return of the warrant, with a copy of the complaint attached, shall confer jurisdiction upon such officer as fully as if the complaint had originally been made before him." 27 Stat. 609.

It seems clear to us that not only is the officer or magistrate issuing the warrant required to attach thereto a certified copy of the complaint, but that the warrant when executed is to be returned, with a copy of the complaint attached; that it is this return which confers the jurisdiction; that the officer executing it had no right to detach the one from the other, and the commissioner to whom it was returned had no right to detach the one from the other; and that the two parts, together with the return thereon, constitute one paper, to confer jurisdiction upon the officer or magistrate to whom the return was made, and there is not only no necessity, but no authority, for making a separate indorsement of the file mark on the different parts of this legal document.

The amount of this schedule is only $1.40. But the importance of the question, and its value in dollars and cents to the plaintiff in error, is well known to all who are at all conversant with the practice and proceedings in the United States courts where papers are required to be filed, and the person filing the same permitted and authorized to make a charge therefor against the government. This error of the court requires that the judgment be reversed to that extent, and amended or reformed so that it shall stand as a judgment for $394.75 instead of for $396.15, with interest and costs, as adjudged in the district court. It is therefore ordered that the defendant in error have judgment against the United States for the sum of $394.75, with interest from June 9, 1900, until paid, together with the sum of $17.75, costs in the district court.